UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOURAV SINGH,<br><br>      Petitioner,<br><br>  v.<br><br>WARDEN OF ADELANTO<br>DETENTION FACILITY, et al.,<br><br>      Respondents. | Case No. 5:26-CV-00332-MRA-SP<br><br>**ORDER GRANTING PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING IMMEDIATE RELEASE FROM CUSTODY [3]** |

  Before the Court is Petitioner's Ex Parte Application for a Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 3. Petitioner requests that the Court order his immediate release from custody and bar his re-detention unless and until the government proves by clear and convincing evidence that he is a flight risk or danger to the community. *Id.* at 2. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

**I. BACKGROUND**

  Petitioner Gourav Singh ("Petitioner") filed this habeas petition on January 26, 2026. ECF 1. The petition alleges as follows:

1    Petitioner is a citizen of India who entered the United States on or about March 30, 2024. *Id.* ¶¶ 7, 31. Petitioner was detained by Immigration and Customs Enforcement ("ICE") upon entry. *Id.* ¶ 31. Upon determining that Petitioner was not a flight risk, ICE released him pending his removal proceedings. *Id.* As a condition of his release, Petitioner was required to attend periodic check-ins with ICE officials. *Id.* ¶ 32. Petitioner attended all check-ins and otherwise complied with all requirements. *Id.*

On November 29, 2025, two days after Petitioner's routine check-in, ICE officers arrested him in the parking lot outside of his home. *Id.* ¶ 33. Petitioner was not notified of the reason for his detention or given an opportunity to rebut any claims. *Id.* Petitioner is currently being held at the Adelanto Detention Facility in Adelanto, California. *Id.* ¶ 7. After his re-detention, Petitioner requested a bond hearing before an immigration judge but was denied a hearing pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *Id.* ¶ 35.

In the instant TRO Application, which was filed the same day as the petition, Petitioner requests that the Court enjoin Respondents Warden of the Adelanto Detention Facility; Ernesto Santacruz, Field Office Director of ICE; Todd M. Lyons, Acting Director of ICE; Kristi Noem, Secretary of the United States Department of Homeland Security; and Pam Bondi, Attorney General of the United States (collectively, "Respondents" or the "government") from continuing to detain him. ECF 3 at 2. Petitioner argues that his "detention without a pre-deprivation hearing violates due process." *Id.* at 7. Petitioner further claims that ICE failed to provide him with any information about why his supervision was revoked, and ICE has no particularized evidence that Petitioner is a danger to the community or a flight risk. *Id.* at 7.

On January 29, 2026, Respondents filed a one-page Opposition to the TRO Application. ECF 7. Respondents provide no response to the arguments Petitioner raises in his Petition or TRO Application. Rather, Respondents represent that Petitioner likely qualifies as a Bond Eligible Class Member in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

*Id.* at 2. On January 30, 2026, Petitioner filed a Reply to Respondents' Opposition, in which Petitioner argues that Respondents ignored the due process violation at issue and reiterates the need for Petitioner's immediate release. ECF 8 at 2–3.

## II. LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *Cottrell*, 632 F.3d at 1132.

## III. DISCUSSION

Having reviewed and considered the filings and applicable law, the Court finds that Petitioner is likely to succeed on the merits or at least has raised serious questions going to the merits of his procedural due process claim, that Petitioner has established irreparable

harm, and that the balance of hardships tips sharply in Petitioner's favor.

## A. **Likelihood of Success on the Merits**

It is settled law that noncitizens within the United States are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of [removal] proceedings."); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (same). The government does not dispute this.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), when determining what process is required before the government may impair a protected interest, the Court must weigh (1) the nature of the private interest at stake; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interests.

The government does not address the *Mathews* test. Nor does the government dispute that non-citizens, like Petitioner, have constitutional procedural due process rights—including the right to be free from unlawful detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (private interest in freedom from detention is "the most elemental of liberty interests").

"Once a liberty interest is established, the question is whether process—a hearing—would lessen the risk of an erroneous detention." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025). Where an individual has not received a bond or redetermination hearing, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (internal citation and quotations omitted). Here, Petitioner argues that the risk of erroneous deprivation is high because, after ICE made the determination that he was not a flight risk or danger, he was re-detained without any opportunity to contest the basis for his re-detention. The government does not address these arguments at all or present any

countervailing interest in re-detaining Petitioner without a pre-deprivation bond hearing. To be clear, the government does not argue that Petitioner is a flight risk or danger to the community. *See generally* ECF 7. "And detention for its own sake is not a legitimate governmental interest." *Salcedo Aceros*, 2025 WL 2637503, at *12 (citing *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025)). Moreover, custody hearings are "routine and impose a 'minimal' cost." *Singh*, 803 F. Supp. at 1047-48 (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025)). "The government's interest is further diminished where a person "has consistently appeared for [his] immigration hearings ... and [ ] does not have a criminal record." *Singh*, 803 F. Supp. at 1048 (quoting *Pinchi*, 2025 WL 1853763, at *2).

Thus, based on the record before the Court, each *Mathews* factor favors Petitioner and demonstrates that he is likely to succeed on the merits or at least has demonstrated serious questions going to the merits of his procedural due process claim—that is, that he should have received process before he was detained. *See Singh*, 803 F. Supp. at 1048 ("'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'") (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985)) (other internal citations omitted).

### B. Irreparable Harm

Petitioner has also established irreparable harm. "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)).

### C. Other *Winter* Factors

The last two *Winter* factors merge when the government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because it would be neither equitable nor in the public interest to allow the government to continue to violate federal law. ECF

3 at 12. While Respondents do not bother to respond to Petitioner's argument, the Court notes that any prejudice to the government would be slight. *See, e.g., Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *8 (N.D. Cal. Aug. 21, 2025) ("Respondents risk only a short delay in detaining Petitioner if Respondents ultimately show that detention is warranted.").

Moreover, the Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the Immigration and Nationality Act). That the government has an interest in enforcing the immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency action" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

### D. Scope of Relief

"Injunctive relief should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). Petitioner seeks his immediate release. The government argues that "to the extent Petitioner would be entitled to any remedy via the TRO Application, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)." ECF 7 at 2.

For the reasons explained above, the Court is persuaded that a pre-deprivation

hearing is warranted in this case given Petitioner's substantial liberty interests; the government's decision to re-detain Petitioner without notice or an opportunity to respond to any claim of changed circumstances requiring detention; and the government's failure to establish that Petitioner is a flight risk or danger.  Numerous district courts, including this Court, have granted the same relief Petitioner seeks here.  *See, e.g.*, *Garcia Mejia v. Noem*, No. 5:25-cv-03504-MRA-JDE, ECF 13 (C.D. Cal. Jan. 5, 2026); *Juarez Fernandez v. Semaia*, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 (C.D. Cal. Jan. 13, 2026) (granting immediate release where noncitizen's parole was revoked without due process); *M.V.F.*, 2025 WL 369141, at *8 (same); *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321 (S.D. Cal. Dec. 23, 2025) (same).

Finally, the Court exercises its discretion and waives the bond requirement under Rule 65(c), because Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed.

### IV.   CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**.  The Court **ORDERS** as follows:

1. Petitioner shall be immediately released from custody.
2. Respondents are enjoined from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change in circumstances requiring his re-detention and a timely hearing.  At any such hearing, Respondents shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a risk of flight or danger to the community; and
3. Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue.  *See* L.R. 65-1.  Respondents shall file any written response to the Order to Show Cause no later than **February 11, 2026**.

Petitioner shall file a reply no later than **February 13, 2026**. If the parties agree that the TRO should be converted into a preliminary injunction and/or that dismissal of the habeas petition is warranted because the relief sought is now moot, they shall file a joint stipulation no later than **February 11, 2026**. The Court will order an OSC hearing only if necessary.

This TRO shall take immediate effect on **February 2, 2026**, and expires at 5:00 p.m. on **February 16, 2026**. The TRO may be extended for good cause or upon Respondents' consent.

**IT IS SO ORDERED.**

Dated: February 2, 2026

HON. MONICA RAMIREZ ALMADANI
UNITED STATES DISTRICT JUDGE